**DEERE & COMPANY, Plaintiff,**

v.

**K.I. LOY, Defendant.**

Civ. A. No. 93–2212–GTV.

United States District Court, D. Kansas.

Dec. 12, 1994.

Mark A. Ferguson, Lathrop & Norquist, Overland Park, KS, Daniel M. Dibble, Timothy K. McNamara, Lathrop & Norquist, Kansas City, MO, for plaintiff.

Robert S. Tomassi, Mark A. Werner, Kurtis I. Loy, Reina J. Holtman, Loy, Tomassi & Werner, P.A., Pittsburg, KS, for defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

### I. Introduction

This is a diversity of citizenship action brought to enforce an unconditional guaranty. Plaintiff Deere & Company (Deere) contends that K.I. Loy executed an uncondition-

al guaranty of the debts of Southeast Equipment, Inc. (Southeast), a John Deere dealer located in Oswego, Kansas. Defendant K.I. Loy contends that a letter dated July 24, 1985, authored by a third party, effectively revoked his guaranty. Plaintiff contends that the letter of revocation was ineffectual because it did not conform with the requirements of the guaranty and the Statute of Frauds.

The case was tried to the court on August 15, 1994, and closing arguments were heard on September 16, 1994. After considering the evidence in this case, the court finds that the letter dated July 24, 1985 effectively revoked K.I. Loy's guaranty and that Deere has no claim against Loy for the current debts of Southeast.

Pursuant to Fed.R.Civ.P. 52(a), the court makes the following findings of fact and conclusions of law.

## II. Findings of Fact

1. Plaintiff Deere is a manufacturer, distributor and seller of agricultural implements, lawn and garden implements, tools and equipment and related products and is the successor by merger to the John Deere Company.

2. Southeast was a John Deere dealer located in Oswego, Kansas between the years 1975 and 1992.

3. Stan Gavin was a shareholder, officer and controlling manager of Southeast.

4. Defendant Loy was the father-in-law of Stan Gavin.

5. On December 1, 1975, Loy executed an unconditional guaranty of the debts of Southeast in favor of John Deere Company. The guaranty provided that Loy would "unconditionally guarantee payment of whatever sum [Southeast] shall at any time be owing [Deere], whether heretofore or hereafter contracted."

6. In 1985, K.I. Loy asked Stan Gavin to obtain a release of Loy's guaranty of Southeast's debts owed to Deere.

7. On July 24, 1985, Stan Gavin prepared and signed K.I. Loy's name to the letter sent to John Deere Company requesting revocation of Loy's guaranty.

8. The guaranty executed by Loy states as follows:

Any notice of revocation hereof shall be in writing addressed and delivered to the John Deere Company, 3210 East 85th Street, Kansas City, Missouri 64132, either personally or by registered or certified mail. It is understood that any revocation I may make shall not become effective until the expiration of the authorized dealer agreement in effect between you and Southeast Equipment, Inc. on the date I deliver written notice of my revocation of this guarantee to you.

9. An authorized representative of John Deere Company received the letter of revocation.

10. John Deere Company acknowledge receipt of the letter of revocation. Deere representatives informed Stan Gavin that K.I. Loy had been released from his guaranty.

11. From July 24, 1985 until April 1993, John Deere Company and its successors acted and treated the guaranty of K.I. Loy as having been revoked.

12. From July 24, 1985 through December 1992, John Deere Company and its successors extended new credit to Southeast and entered in to new contracts with Southeast without relying upon any guaranty by K.I. Loy of Southeast's debts.

13. Stan Gavin, during the course of operating the dealership, executed and caused Deere to accept numerous false and fraudulent promissory notes and retail installment contracts. These notes and contracts bore forged signatures, including the forged signature of K.I. Loy. The submission of these fraudulent notes violated the terms of the dealership agreement and security agreements with Deere.

14. Upon discovering Gavin's fraudulent conduct, Deere promptly closed the dealership, sold the collateral at auction and sought a deficiency judgment. This court entered a deficiency judgment against Southeast in the amount of $951,687.27 in Case No. 93–2005–GTV, 1994 WL 171449. Deere seeks to col-

lect this judgment from defendant Loy based on his personal guaranty.

## III. Conclusions of Law

### A. Choice of Law

■ "In making choice of law determinations, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Shearson Lehman Brothers, Inc. v. M & L Investments,* 10 F.3d 1510, 1514 (10th Cir.1993) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). In cases involving interpretation of a contract, Kansas courts apply the law of the place where the contract was made. *Simms v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640, 642, 685 P.2d 321, 324 (1984). A contract is made when the last act necessary for its formation takes place. *Id.*

■ In the present case, the contract was "made" when K.I. Loy signed the guaranty in Oswego, Kansas on December 1, 1975. As a result, Kansas law applies to the determination of the enforcement and revocation of K.I. Loy's guaranty executed in favor of Deere.

### B. Revocation of a Guaranty

■ The unconditional guaranty signed by defendant K.I. Loy provides that notice of revocation shall be in writing and that "any revocation I may make shall not become effective until the expiration of the Authorized Dealer Agreement in effect, between you and Southeast Equipment, Inc., on the date I deliver written notice of my revocation of this guaranty to you." On July 24, 1985, Stan Gavin prepared and signed K.I. Loy's name to a letter requesting revocation of K.I. Loy's guaranty of Southeast's debts. The letter was addressed to Jerry Callaway, Division Credit Manager, John Deere Company, Kansas City, Missouri. Callaway testified at trial that he does not deny receiving the letter. Plaintiff does not assert that any of the debt at issue in this action accrued prior to July 24, 1985 or prior to the renewal of the authorized dealer agreement with Southeast. Thus, plaintiff agrees that if the July 24, 1985

letter revoked the guaranty, then the relief requested must be denied.

Plaintiff asserts that the terms of the guaranty require the guarantor, and no other person, to provide notice in writing. Thus, Plaintiff argues that Gavin's signature of K.I. Loy's name is ineffective to revoke the guaranty. In opposition, defendant asserts that he appointed Gavin as his agent to obtain a release from the guaranty and that the July 24, 1985 letter was an effective revocation of the guaranty.

■ Written notice of revocation of a guaranty is required when the contractual terms of a guaranty so requires. *Milliken and Co. v. Eagle Packaging Co., Inc.,* 295 N.W.2d 377, 380 (Minn.1980); *Rambo v. Cobb Bank & Trust Co.,* 146 Ga.App. 204, 245 S.E.2d 888, 889 (1978). Plaintiff does not dispute that it received the July 24, 1985 letter, but argues that the notice was not valid because it was not written and signed by the guarantor.

■ Although the guaranty requires the guarantor to notify Deere, a close reading of the guaranty does not disclose an express requirement that notice of revocation be written and signed by the guarantor. The contract is at the very least ambiguous on this point. As with any contract, ambiguities in a guaranty are construed against the party drafting the document. *Kansas State Bank & Trust Co. v. DeLorean,* 7 Kan.App.2d 246, 252 640 P.2d 343, 348 (1982). The guaranty was prepared by Deere. The court is not persuaded that K.I. Loy had to write and sign the letter to comply with the terms of the guaranty. *See First Wisconsin Financial Corp. v. Yamaguchi,* 812 F.2d 370, 373 (7th Cir.1987) ("[I]t is undesirable to allow foibles of expression to expose guarantors to continuous liability.... Perfection is too much to demand in any notice...."). The terms of the guaranty do not explicitly prohibit notice of the revocation by an agent of the guarantor.

The court concludes that if K.I. Loy effectively named Stan Gavin his agent for the purpose of revoking Loy's guaranty, then the July 24, 1985 letter complied with the terms for revocation contained in the guaranty.

### C. Agency

■■■ Agency is defined under Kansas law as a contract by which one of the parties delegates to the other the authority to act on his or her behalf. *Turner and Boisseau v. Marshall Adjusting Corp.*, 775 F.Supp. 372, 377–78 (D.Kan.1991); *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 390, 710 P.2d 1297, 1303 (1985). The party relying on the agency to establish his claim or demand has the burden of establishing the agency's existence by clear and satisfactory evidence. *Turner and Boisseau,* 775 F.Supp. at 378; *Rodgers v. Arapahoe Pipe Line Co.*, 185 Kan. 424, 430, 345 P.2d 702, 707 (1959).

■■■ "It is fundamental that absent statutory requirements, no particular formalities are needed to establish the principal-agent relationship." *Ocrant v. Dean Witter & Co., Inc.*, 502 F.2d 854, 858 (10th Cir.1974). The agent's authority to do an act can be created by written or spoken words or other conduct which causes the agent to believe that the principal wants him to act on the principal's behalf. *System Investment Corp. v. Montview Acceptance Corp.*, 355 F.2d 463, 466 (10th Cir.1966).

■■■ Actual agency can be either express or implied. *Rodgers,* 185 Kan. at 430, 345 P.2d at 707. Express agency is created when the principal authorizes the agent to do the delegated act by express words. *Id.* at 430–31, 345 P.2d at 707; *Professional Lens Plan,* 238 Kan. at 390, 710 P.2d at 1303.

K.I. Loy testified that he told Stan Gavin to do what was necessary to get him off the guaranty. Gavin testified at his deposition that Loy told him to look into the possibility of getting out of the guaranty. Gavin then wrote the July 24, 1985 letter on Loy's stationary and signed Loy's name to the letter. Loy made no further attempts on his own behalf to seek revocation of the guaranty.

The court is convinced that an agency was formed for the limited purpose of Gavin obtaining revocation of the guaranty on Loy's behalf. Loy created an express agency when he asked Gavin "to do what was necessary to get him off the guaranty." No particular formalities are required and Loy's words can

be reasonably interpreted as creating a principal-agent relationship.

### D. Statute of Frauds

■■■ Plaintiff argues that an agent's authority must be in writing in order for an agent to revoke a contract that must be formed in compliance with the Statute of Frauds. The Kansas Statute of Frauds provides in pertinent part:

No action shall be brought whereby to charge a party upon any special promise to answer for the debt, default or miscarriage of another person ... unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing.

K.S.A. § 33–106 (1993). The Statute of Frauds requires creation of guaranty to be in writing, and if signed by an agent, then the agency must be in writing. This concept is known as the rule of "equal dignities." In support, plaintiff cites this court's opinion in *Scherman v. Kansas City Aviation Center, Inc.*, 1993 WL 191369 (D.Kan. May 14, 1993) in which the court interpreted Georgia law where the equal dignities rule is codified separately under its general agency law. Kansas has not separately codified the rule of equal dignities, but the concept is present in the limited circumstances in which the Statute of Frauds applies.

Plaintiff argues that under the language of the Statute of Frauds, a letter of revocation signed by an agent is ineffective unless the agency's authority is in writing. Plaintiff asserts that this rule is illustrated by the Tenth Circuit's opinion in *Reno v. Beckett*, 555 F.2d 757 (10th Cir.1977). *Reno* involved a suit for specific performance of a contract for the sale of real estate. Substantial written modifications were made to the original contact and the modifications were not signed by the vendor. Under Kansas law, when the original contract must be in writing under the Statute of Frauds, then any modifications to that contract is also governed by the statute. *Id.* at 766. The court held that "any modification is unenforceable in the ab-

sence of evidence that the person signing the modifications had written authorization from [his principal]." *Id.*

 The court is unconvinced that the agency must be created in writing in order for an agent to revoke a guaranty. The rationale for requiring modifications to a contract to comply with the Statute of Frauds is not applicable to revocation of a contract. A modification must be in writing and signed by the party to be charged or by an agency acting under written authority because "it is, in essence, a new agreement and must therefore meet the requirements of the Statute of Frauds." *Dave Zerwas Co. v. James Hamilton Constr. Co., Inc.*, 117 N.M. 724, 726, 876 P.2d 653, 655 (1994). The purpose of the Statute of Frauds is to fix the terms of a contract between the parties in the signed writing and to avoid enforcement of contracts or terms that the parties did not actually agree upon. *Id.* at 727, 876 P.2d at 656; 2 Corbin on Contracts § 275, at 2–3 (1950). The purpose of the Statute of Frauds is not furthered when the question involves valid revocation rather than valid execution or modification of a contract.

The Statute of Frauds does not require revocation of a guaranty to be in writing. *Home Savings Bank v. Gertenbach*, 270 Wis. 386, 71 N.W.2d 347, 351 (1955) (citing 3 Corbin on Contracts § 574). Additionally, the law does not require an agency to be created in writing except in the limited circumstances that fall within the scope of the Statute of Frauds. *See System Investment Corp. v. Montview Acceptance Corp.*, 355 F.2d 463, 466 (10th Cir.1966); Restatement (Second) of Agency § 30(1) (1985).

 Although the guaranty contract in the present case required notice of revocation to be in writing, it does not follow that there must be a written authorization for an agent to provide the notice. Where the law does not require written execution of a document, the rule of equal dignities does not apply. *Harris v. Barnes*, 100 Ga.App. 412, 111 S.E.2d 147, 149 (1959).

The court concludes that the Kansas Statute of Frauds does not require the agent's authority to be in writing when the agent

acts to give notice of revocation of a guaranty. K.I. Loy named Stan Gavin his agent for the limited purpose of seeking revocation of Loy's personal guaranty. Gavin's authorization to act as Loy's agent did not have to be in writing. Loy was effectively released from his unconditional guaranty of Southeast's debts by giving appropriate notice in the July 24, 1985 letter. Plaintiff has no claim against Loy for the current debts of Southeast which are sought in this action. The relief requested by plaintiff is, therefore, denied.

IT IS, THEREFORE, BY THE COURT ORDERED that judgment be entered in accordance with the findings and conclusions contained in this Memorandum and Order.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**