No. 43,433

ALLEN WAYNE COLLINS, by MARY LOUISE COLLINS, His Mother and Next Friend, *Appellee,* v. CITY CABS, INC., and HARLEY W. MC-CLINTOCK, *Appellants.*

(388 P. 2d 597)

Opinion filed January 25, 1964.

*Daniel C. Bachmann,* of Wichita, argued the cause and was on the brief for the appellants.

*Patrick F. Kelly,* of Wichita, argued the cause, and *John C. Frank, James P. Johnston* and *Dan D. Kincheloe,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: Plaintiff, a five-year-old boy, was struck by a taxicab while in a crosswalk in an emergency entrance driveway to the Sedgwick County Hospital. He brought this action—by his mother as next friend—against the cab company and its driver to recover for his personal injuries.

The pleadings need not be detailed. They contained the usual allegations of negligence and denials. The petition sought recovery in the amount of $52,000. Subsequently, by permission of the court, it was amended by increasing the prayer to $92,000. No special findings were requested. The jury returned a general verdict for $61,000. It was approved. Defendants' motion for a new trial was overruled and judgment was entered upon the verdict. Defendants have appealed from all adverse orders and contend they are entitled to a new trial because of four grounds of alleged error.

It first is contended the trial court committed reversible error and abused its discretion in sustaining plaintiff's motion to increase the prayer of the petition on the morning of the first day of trial, and in sustaining such motion in the presence and hearing of the jury.

At a post-trial hearing on the matter concerning the circumstances of granting plaintiff's motion to increase the prayer, the trial court specifically found that its ruling—

". . . was in a whispering voice, and that the rulings were made so that the jury did not know what the rulings were about."

We accept this finding as being final and conclusive, and therefore that the order permitting the amendment was not made "in the presence and hearing of the jury."

With respect to the amendment itself, the facts appear to be substantially as follows:

The petition, which was filed in May, 1961, alleged that plaintiff suffered numerous lacerations, sprains, cuts and broken bones, with resulting pain and physical and mental shock, and, as stated, sought recovery in the amount of $52,000. The action was tried in October, 1962. About six weeks prior to the date of trial counsel had a telephone conversation in which counsel for plaintiff told counsel for

defendants that in the meantime it had been discovered that plaintiff had sustained severe brain damage as a result of the accident, and that he intended to file a motion to amend the petition by increasing the prayer. No written motion, however, was filed. At the opening of the trial, when counsel were at the bench, counsel for plaintiff orally moved for permission to amend. Counsel for defendants, although impliedly conceding the matter was discretionary with the court, entered an oral objection. The trial court reserved its ruling on the motion until the evidence was in. At the conclusion of the evidence it permitted the amendment to be made in the manner and under the circumstances above stated.

Under the circumstances shown, it may not be said that the trial court abused its discretion or committed error in permitting the amendment. Under the provisions of G. S. 1949, 60-759, trial courts are given broad discretionary powers concerning the amendment of pleadings, before or after judgment, when the amendment does not change substantially the claim or defense. The "claim" here was for damages for personal injuries sustained because of the alleged negligence of defendants. The claim was not changed— only the amount sought. In *Fiest v. Steere*, 175 Kan. 1, 259 P. 2d 140, it was held:

"The allowance or denial of requests to amend pleadings are matters over which a trial court has authority to exercise wide discretion and its action with respect thereto will not constitute reversible error unless it affirmatively appears the amendment allowed or denied is so material that it affects the substantial rights of the adverse party and constitutes a clear abuse of judicial discretion." (syl. 1.)

To the same effect see *Thompson v. Howard Motors Co.*, 122 Kan. 339, syl. 6, 252 Pac. 468, and *Blair v. Hallmark*, 188 Kan. 102, syl. 2, 360 P. 2d 1051.

It next is contended that the verdict is contrary to the evidence.

Nothing would be accomplished by detailing the testimony of the various witnesses as to just how this accident occurred. It is sufficient to say there was evidence which established that at the time and place in question the driver of the cab was not maintaining a proper lookout and was guilty of other acts of negligence charged in the petition. No complaint is made as to the instructions, and the presumption is that the jury was correctly instructed on all phases of the case, including the duties of a driver of a motor vehicle, negligence, proximate cause, the rule of contributory negligence applicable to a young child, and all other matters in issue. It was

the jury's duty to find the facts, and the general finding in favor of plaintiff imports a finding in his favor upon all controverted questions of fact in the case in support of which evidence was introduced. It may not be said the verdict is contrary to the evidence.

It next is contended that the verdict was given under the influence of passion and prejudice, and is excessive.

With respect to this proposition, it is noted that under this heading in their brief defendants make no argument concerning the amount of the verdict. The rule is that assignments of error are considered to be abandoned unless argued in the brief of an appellant. (*Tawney v. Blankenship*, 150 Kan. 41, syl. 1, 90 P. 2d 1111, and *Ferrellgas Corporation v. Phoenix Ins. Co.*, 187 Kan. 530, syl. 3, 358 P. 2d 786.) In passing, however, we note that the record contains much medical evidence to the effect plaintiff had sustained severe brain damage, and that the parties stipulated—

"It is stipulated between the plaintiff and the defendants that the plaintiff has been examined and tested by the Poling Neuropsychiatric Clinic, the results of which revealed evidence of organic and emotional disturbances; that the prognosis in light of the plaintiff's age is indeterminate; that psychiatric treatment is recommended."

The contention that the verdict was given under the influence of passion and prejudice, and defendants' principal and final contention that a new trial should be granted because of alleged prejudicial conduct by plaintiff's counsel—will be considered together.

Defendant cab driver was seventy-seven years of age at the time of trial. He had been engaged in that line of work for many years. Counsel for plaintiff—by various tactics—attempting to show that he had been charged with many traffic violations over the years— some being of a serious nature. The trial court ruled that evidence of this nature was inadmissible. No record of the final arguments of counsel was made. According to an affidavit of defendants' counsel, offered at the hearing on the motion for a new trial, it appears that during final argument counsel for defendants told the jury that although counsel for plaintiff has accused defendant cab driver of serious traffic convictions and charges there had been no evidence to support those accusations, whereupon counsel for plaintiff interrupted and in a loud voice said:

"But Judge . . . you told me you wouldn't let that evidence in."

Also, according to this affidavit, counsel for plaintiff in the final portion of his closing argument referred to defendant cab driver as—"a menace on the streets of Wichita."

It is contended the foregoing, and other matters occurring at the trial, show a deliberate attempt by plaintiff's counsel to impress the jury with the fact that defendant cab driver had a bad driving record but that the court would not admit such evidence, and that counsel's tactics throughout the trial were such as to create an "atmosphere" that the trial was "between an injured five-year-old boy and a seventy-seven-year-old man," all of which tended to inflame and prejudice the jury.

All of these matters were given a thorough airing at the hearing on the motion for a new trial. At the conclusion thereof the trial court commented at length. Rather than attempt to summarize— we quote its comments in full:

"The court, of course, is not involved with any emotions between counsel. I have to look at this very realistically and factually from the standpoint of the law. . . . As far as the affidavit is concerned, they are outside of my knowledge, but from a legal standpoint, that is the way I am looking at it, in answering the motion for new trial, item by item, I wouldn't say that there was misconduct on the part of counsel. By rights you have to renew your demurrer, so from a legal standpoint I don't believe the defendants are entitled to a new trial from that standpoint.

"Now, with regard to Mr. Kelly's comments during the argument. I know that arguments are always somewhat heated, I'm of the opinion, and I think the law will bear me out, that unless a motion at the time is presented to the court for mistrial because of the argument of counsel or statements made by counsel, the defendant would waive their right to a mistrial.

"With regards to the evidence of convictions and so forth that Mr. Kelly attempted to get in, again, I think, I sustained every objection that was made to those questions asked, and when objections were made I sustained them. I don't believe that evidence of prior convictions is admissible in a damage suit, and I think I made that comment either in Chambers or in court. . . . I sustained your objection when Mr. Kelly referred to it. I sustained those objections right down the line. I don't think there was any motion made then or during the cross-examination to strike. I don't know whether I struck —I don't think I struck the comments from the consideration of the jury but I don't think there was any motion for me made that I could rule upon, and there was no objection to the closing argument. As I say, I just don't believe there is any legal ground for the basis of your objection on your first prayer in your motion for new trial. And I don't mind telling you, I was surprised that no objections were made or that there wasn't a motion made for—frankly, I wouldn't, if the motion would have been made, I wouldn't have granted the motion for mistrial because I don't think there was misconduct on the part of either counsel in this case that would warrant a new trial. I think the defendant left the case, without objections, go to the jury and are bound by the jury's verdict or decision. . . . At the conclusion of the evidence Mr. Kelly renewed his motion to amend and at that time I did grant the amendment to conform with the proof and amended the petition from $52,000.00 to $92,000.00

because he was, in my opinion, able to prove and did prove, and apparently the jury believed so, that the child did have brain damage. And on a six year old child, brain damage, whether it is $52,000.00 or $92,000.00 or $192,000.00, I don't know how much, I don't know the value of brain damage, except I think it's very severe. Anyway, the Supreme Court, and I read the decisions, has on numerous occasions, and I think you yourself said, Mr. Bachmann, in Chambers, that the Supreme Court has ruled that it is within the court's discretion. I think you objected to it, but as I recall at the time you smiled. You said, I will note my objection but it is discretionary with the court. . . . I think factually the jury followed the proof. We all have compassion for a small child like that. But I don't think there was anything in the argument, in the evidence, or in the rulings that the jury was really influenced by passion or prejudice in the case.

"Now, with regard to the fourth ground, the verdict was in whole or in part contrary to the evidence, I don't think you pointed out to me, to my satisfaction at least, where there is any decision that was contrary to the evidence. Weighing brain damage, and there was nothing to the contrary, the evidence stands that the child does have brain damage, and I don't know how you can evaluate it. And if I was on the jury myself, I don't know how I would evaluate brain damage. There is nothing before me now to show that there was any verdict that was contrary to the evidence at all. And Mr. Kelly made the comment your're asking the court to—I don't think you're asking the court to cut, as Mr. Kelly said, cut down the verdict. . . . I have considered this matter very carefully and I heard the case.

"I was very careful in my ruling on the case. There were no objections on the part of either counsel to the instructions, so counsel are bound by the instructions. I think they were proper. I wouldn't have given them if I hadn't.

"And I just don't find anything, Mr. Bachmann, on the part of the defendants or the plaintiff that would warrant me in granting a new trial. And I am going to overrule your motion."

Our review of this matter has been handicapped somewhat by the fact no record of the final arguments was made. An appellate court should not be called on to "retry" issues on affidavits as to what happened at the trial. If it is a fact that no objection was made to the matters occurring on final argument, then, of course, defendants are in no position to complain. (*Watkins Co. v. Hanson,* 185 Kan. 758, 761, 347 P. 2d 447.) Under the circumstances, however, we prefer to rest our decision on the broader and over-all aspect of the question.

In the very nature of things, a trial court always is in a better position than an appellate court to determine whether a verdict resulted, wholly or in part, from the asserted misconduct of counsel, and ordinarily its conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly in error.

In *Ely v. Jones,* 110 Kan. 10, 202 Pac. 609, it was said:

"A new trial is also asked on account of what is alleged to be the misconduct of counsel for the defendant. The trial court's ruling on this matter must be regarded as conclusive because of its superior opportunity to form a just opinion of the character and effect of the conduct complained of." (p. 12.)

In *Smith v. Cement Co.*, 86 Kan. 287, 120 Pac. 349, it was held:

"Before a judgment will be reversed for misconduct of counsel of the prevailing party occurring at the trial it must be made to appear that such misconduct prejudiced the rights of the defeated party." (syl. 1.)

and said:

"It rests in the sound discretion of the trial court to determine from all the circumstances whether the irregularity or misconduct may have influenced the jury in arriving at their verdict." (p. 289.)

The rule of the last-mentioned case was followed in *Murphy v. Edgar Zinc Co.*, 128 Kan. 524, syl. 1, 278 Pac. 764, 65 A. L. R. 1213. See also *Winter v. Sass*, 19 Kan. 556, 566; *Bortnick v. Cudahy Packing Co.*, 119 Kan. 864, 866, 241 Pac. 442, and *Thompson v. Howard Motors Co.*, 122 Kan. 339, 343, 252 Pac. 468.

The above-quoted comments of the trial court speak for themselves and indicate a conscientious approach to the question. After a most careful consideration of the record and the contentions made, we have concluded that we would not be justified in disturbing the order denying the motion for a new trial. The law does not guarantee to every litigant a "perfect" trial, but it does guarantee to him a fair trial. It is not enough to disturb a judgment that some error or impropriety transpires during a trial, and error, standing alone— does not raise the presumption of prejudice. Reversal is proper only where it is affimatively established that the error has prejudicially affected the substantial rights of the defeated party. (*Home Ins. Co. v. Atchison, T. & S. F. Rly. Co.*, 189 Kan. 316, 319, 320, 369 P. 2d 338.) Our decision, however, is not to be construed as condoning the alleged acts of misconduct of counsel complained of by defendants—if, in fact—they did occur.

Here, the trial judge—who saw and heard all that transpired— including the "reactions"—if any—of the jury—reached the conclusion that the verdict was not the result of passion and prejudice, and that defendants' rights were not prejudicially affected by anything occurring at the trial—and, as before stated, we conclude that we would not be justified in disturbing the finding and order so made. Further discussion would be repetitious. The judgment is affirmed.

JACKSON, J., not participating.